Edwin John ABRAMSON and Emmett Johns, Executors of the Estate of John P. Abramson, Deceased, and Lola F. Abramson, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Edwin John ABRAMSON and Emmett Johns, Executors of the Estate of John P. Abramson, Deceased, and Lola F. Abramson, Plaintiffs,

v.

G. G. JECK, Individually and as Collector of Revenue of the United States, for the District of Iowa, Defendant.

Civ. A. Nos. 1–283, 1–284.

United States District Court
S. D. Iowa, Central Division.

July 5, 1955.

Neill Garrett and Matthew J. Heartney, Jr., Des Moines, Iowa, for plaintiffs.

Ruppert Bingham, Sp. Asst. to the Atty. Gen., Roy L. Stephenson, U. S. Atty., and Robert J. Spayde, Asst. U. S. Atty., Des Moines, Iowa, for defendants.

RILEY, District Judge.

These actions are claims for refund of the amount paid by plaintiffs John P. and Lola F. Abramson because of deficiencies assessed by the Commissioner of Internal Revenue for the fiscal years of the plaintiff ending January 31, 1949, and January 31, 1950. (In this memorandum, the word "plaintiff" refers to John P. Abramson, now deceased.)

The deficiencies related, among other things, to amounts taken as deductions by plaintiff as rental paid for the use of equipment in his contracting business. There remain only in the controversy the rental deductions; the items of convention expense and payroll deductions are disposed of by agreement.

The rentals were paid under written leases containing a description of the equipment and the monthly rental, and were usually calculated on the basis of a monthly rental payment of 10% of the list price of the equipment. There was variation from the lease as to times of payment, which were accounted for by plaintiff's inability to pay at the time, or the fact that the equipment was not in use, being during the winter months, and the lessor had been so notified. All of the equipment leases carried a recapture

clause, which was stricken at execution at the request of the lessee, plaintiff.

At some time in late 1950, Gibbs-Cook Tractor & Equipment Company, because of the withdrawal of Mr. Cook, was succeeded by Gibbs-Cook Equipment Company, a separate corporation, which took some of the former's assets. The old company retained some of its used equipment, and in the exchange of letters, Exhibits "O" and "P," plaintiff was informed of the availability of this old equipment, much of which he had had under lease, for purchase at the price as indicated. This confirmed plaintiff's conversation with Mr. Nelson, attorney in fact, who was disposing of these assets for the old company.

It is the claim of plaintiff, and the evidence establishes that it had been his practice to rent equipment for use in his construction business, and Exhibit CC-7 shows a summary of the rentals paid over a period, totalling approximately $278,-000. There had been some prior lease and purchase by plaintiff from Gibbs-Cook of equipment under lease, but it is agreed by the parties that over the period indicated $278,000 had been paid as rentals.

The evidence supports a finding that the leases when made, Exhibits "A" to "N" both inclusive, were good faith equipment rental leases, subject always to the possibility, although not a part of the agreement, that plaintiff might negotiate with the lessor for the purchase of any desired item of equipment, whether or not the recapture clause was stricken.

One item involved, covered by Exhibit "M", was a compressor under written lease, which was subsequently assigned to Iowa-Des Moines National Bank and covered by a chattel mortgage from lessor to the bank. There was a recapture clause in the lease which had been stricken, but nevertheless the piece was acquired by plaintiff for an amount which took into account as part of the agreed sale price some of the rental and interest paid. A bill of sale was issued by Stephens Jones, Inc., (equipment company) lessor, to plaintiff.

The evidence further supports the finding that the negotiations for the purchase of equipment, other than the compressor, were initiated by the lessor after its deal with the new company, and that the leases were not made with any undisclosed agreement that the equipment was to be recaptured by the plaintiff.

All of their prior transactions, including the compressor deal, reveal no undisclosed agreement between plaintiff and Gibbs-Cook that the leases were in effect sales under the recapture clause. The evidence establishes that any contractor leasing heavy equipment could at any time, when the minds of lessor and lessee met, agree on a sale price to the lessee at a figure which would take into account prior rentals paid and Iowa sales or use tax, interest, etc. Stated differently, at any time when the minds of the parties met, they could agree upon a sale price and ultimate transfer of any piece of equipment to the lessee.

There is no evidence that the plaintiff had any title or equity in any of the equipment subsequently purchased at the time when the rental payments were being made by him and being deducted as an operating expense. The written lease contract provides the only evidence of any agreement, oral or written, existing between him and the lessor. The evidence discloses that the plaintiff's possession of some of the equipment during the winter months, when it was not in use, was at the request of the lessor, and the inference is reasonable that the practice was followed because of anticipated use by the lessee of the equipment in the following spring when working operations were resumed. Plaintiff never carried the equipment here involved as his asset before the transactions represented by Exhibits "O" and "P." Both the lease contracts themselves, Exhibits "A" to "N," and the practice in the trade disclosed no right on the part of plaintiff to demand sale to him, nor obligation on his part to take conveyance from the lessor as a recapture privilege or obligation. Until after the sale of the equipment to plaintiff had been effected, in accordance

with the offer disclosed by Exhibits "O" and "P," which was on or subsequent to December 28, 1950, the court can find no evidence that any obligation or relationship existed between plaintiff and his lessor than that of lessor and lessee.

It appears that the difficulty here is that the Government is trying to relate back to the time of making the leases the relationship current between the parties at the time of the sale of the equipment on and following December 28, 1950. The language of Benton v. Commissioner, 5 Cir., 197 F.2d 745, at page 752, seems particularly pertinent:

"In undertaking to apply a purely objective economic test, the Tax Court has fallen into an error similar to that involved in Commissioner v. Culbertson, 337 U.S. 733, 69 S.Ct. 1210, 93 L.Ed. 1659. There being here involved no restraint by law or public policy, the parties had full liberty to contract as they pleased. Whether what is in form a lease is in effect a conditional sale contract depends on the intention of the parties. The economic relation of the value of the property to the option price was only one factor to be considered in determining intent. Further that factor must be considered not as of the time for the exercise of the option, but rather in the light of the facts and circumstances as they existed at the time the parties entered into the contract. The property here involved was subject to drastic changes in value from many causes, such as rapid depreciation of taxicabs, the conclusion of the war, the lifting of government controls, etc. Within the limits of reason, the parties had a right to exercise their own judgment, and that of the Commissioner or of the Tax Court cannot be substituted therefor.

"If the parties in good faith actually intended to enter into a lease contract, then the taxpayer, up until the time that he exercised his option to purchase, acquired no title to or equity in the property. For the Commissioner and the Tax Court to decide solely by the application of an objective economic test that the taxpayer had an equity in the property, effectively begs the question to be decided, namely whether what was in form a lease was in substance and according to the real intention of the parties a conditional sale contract."

■ It is recognized that the court cannot compute the amount of tax ultimately due by virtue of these findings, and that the accountants for the plaintiffs and the Government must determine the actual price paid for each item of equipment, determining what amount of rentals would be treated as applied on sales price and carried into the price at which the item of equipment would be capitalized on the books of the plaintiff. The amount of rentals previously paid, which in the ultimate negotiations was applied or credited on purchase price of the various items of equipment, cannot of course be allowed as a deduction for lease expense, but other rental payments for the years involved, not included in the purchase price, are properly allowable expense deductions in the operation of plaintiff's business.

■ There was much protest on the part of the plaintiff that the Government was attempting to vary the terms of the written leases, that some explanation of the written leases was necessary became apparent from plaintiff's own testimony, which showed that rentals were not paid as stipulated as to time and amount (as when rental equipment was not in use). However, the court must find that the plaintiff had no title or equity in the equipment when the rental payments were made and deducted as an operating expense. The court finds, too, that on occasion items of equipment not returned to the lessor during plaintiff's non-working season were retained in the lessee's possession at the request of or with the consent of the lessor, and no rental payments were made during the time when plaintiff's operations were suspended because of the seasonal period. The court finds that these variations as to the rental

payments were a matter of mutual agreement between lessor and lessee and for their mutual business convenience, and afford no basis for a finding that the effect thereof was to change the rental agreement into a purchase agreement.

The record discloses that the Government's motion to dismiss in each of the two above consolidated cases were ordered submitted with the cases. The action of the court as disclosed by this memorandum of decision disposes of these motions because it is tantamount to overruling the same.

In lieu of specific findings of fact and conclusions of law, as required by Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A., the court adopts and makes a part hereof, the Stipulation of Part of Facts signed and filed by the parties herein on March 4, 1955, and the findings and conclusions contained in this memorandum. Counsel for plaintiffs are asked to prepare and submit to counsel for the defendant for agreement a decree and judgment consistent with this memorandum of decision, preserving due exceptions to the aggrieved party.