WALTER H. KALTREIDER AND IRENE C. KALTREIDER, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 57477, 60041.   Filed April 23, 1957.

*Arthur Markowitz, Esq.,* for the petitioners.
*Edward L. Newberger, Esq.,* for the respondent.

### OPINION.

RICE, *Judge:* Section 117 (a) of the 1939 Code excludes from the definition of those assets entitled to capital gains treatment property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business. Therefore, in deciding whether the gain from the real estate sales in issue was taxable as ordinary income or as a capital gain, we must first decide whether the activities performed by petitioners with relation to the development and sale of the acreage constituted a trade or business within the meaning of the statute.

As has often been noted, what constitutes a trade or business is essentially a question of fact. Among the many tests devised by the courts as an aid to the decision of that question, no one of which is conclusive, are: The continuity and frequency of the sales and the sales-related activities; the extent and substantiality of the transactions; the purpose for which the property was held during the years in question; and the activity of the seller or those acting in his behalf. With regard to the latter of these, it is an accepted principle of law that one may conduct a business through agents, and that because others may bear the burdens of management, the business is nonetheless his. *Welch* v. *Solomon*, 99 F. 2d 41 (C. A. 9, 1938).

In the instant proceeding, respondent determined that the activities engaged in by petitioners in relation to the property in question constituted the carrying on of the trade or business of subdividing, improving, and selling real estate, and that that property was held by them primarily for sale to customers in the ordinary course of their business. We agree.

But the petitioners claim development of the acreage under consideration was undertaken only after an agreement had been reached with the corporation that they would sell it land so long as it was able to construct houses thereon and profitably sell them. They further maintain that they engaged in no advertising or sales activities, and entered into no contracts of sale solely as individuals. According to their testimony, upon settlement of a contract the corporation received that portion of the purchase price allocable to the house, and they received that portion allocable to the tract of land upon which it stood. As we have noted, an individual may conduct his business through agents. We are convinced that whatever was done here by the corporation was done at the instance and for the benefit of the petitioners as their agent.

In 1948 and again in 1952, one of the tax years in issue, the petitioners incurred considerable expense in subdividing the acreage in question into some 28 lots for residential purposes. They then caused their closely held family corporation to construct houses on 18 of those lots, 12 of which were sold to individual purchasers during the taxable years under consideration. The record does not disclose what motives underlay the original purchase of the 27-acre tract. However, even were we to make the gratuitous assumption that petitioners acquired that land solely for investment purposes, nothing of merit would be added to their case. When they embarked upon the development, construction, and sales program which we have outlined, they acquired the status of "dealers" in relation to the property in issue and thereupon became engaged in the real estate business. *Snell* v. *Commissioner*, 97 F. 2d 891 (C. A. 5, 1938), affirming a Memorandum Opinion of this Court dated October 5, 1936. Accordingly, we have found as a fact that during the years in issue the petitioners were engaged in the business of subdividing, improving, and selling of real estate, and that they held the property in question for sale in the ordinary course of that business. We therefore conclude that the gain realized upon its sale was taxable as ordinary income.

Moreover, we do not understand why, if as the petitioners maintain the corporation was acting on its own behalf in constructing and selling the houses, they found it advisable to include on their joint tax returns not only the income realized on the sale of the land, but that from the sale of the houses as well. Such a procedure would seem to be an open admission that the corporation was acting solely on their

behalf. Through their accountant's testimony they claim the original returns were in error; that the sums realized from the sale of houses represented income of the corporation and should have been returned as such; and that for the year 1952 that error was corrected through the filing of amended returns. We are not convinced. The alleged filing "error" was indulged in throughout 4 filing periods by petitioners and their accountant, and was only corrected at the request of their counsel at, as best we can discern, some point after the docketing of the instant case. We consider the original returns to be more truly representative of the relationship maintained between petitioners and their corporation during the years in issue than the amendments thereto. At best the amended returns are no more than self-serving declarations made in an attempt to present petitioners' case in the most favorable light.

The second issue concerns the additions to tax for the year 1952 made by the respondent because of petitioners' failure to file a declaration of estimated tax and their substantial underestimation of tax. Petitioners maintain that they relied solely on their accountant to file such declaration of estimated tax; that he failed to do so for the year in question; and that therefore their failure to file was due to reasonable cause and not willful neglect.

In *Rene R. Bouche*, 18 T. C. 144 (1952), we said at 148–149:

Petitioner also relies on the fact that he turned over to an accountant all financial affairs, including the preparation of his tax returns, contending that this fact shields him from the penalty imposed by respondent. For such fact to be a defense against the consequences of the failure to file a return, certain prerequisites must appear. It must appear that the intervening person was qualified to advise or represent the taxpayer in the premises and that petitioner relied on such qualifications.

Here, as there, no proof has been presented that petitioners' accountant was qualified to advise them concerning tax matters. As revealed by the record he had been a public accountant since 1945, and prior thereto was employed as an investigator in the United States Department of Labor. No other qualifications have been shown. Though petitioners may have relied upon him in the preparation and filing of their returns, there is no evidence that their reliance was well placed. We therefore conclude that the petitioners' failure to file the declaration required by the statute was not due to reasonable cause. *Rene R. Bouche, supra.*

Where no declaration of estimated tax has been filed, the estimate is deemed to be zero and the addition to the tax provided in section 294 (d) (2) for substantial underestimate of estimated tax is mandatory. *Harry Hartley*, 23 T. C. 353 (1954), modified 23 T. C. 564 (1954); *G. E. Fuller*, 20 T. C. 308 (1953), affirmed on other grounds 213 F. 2d 102 (C. A. 10, 1954).

*Decisions will be entered for the respondent.*