E. ALDINE LAKIN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

J. LEE MULLENDORE AND CECIL M. MULLENDORE, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 56967, 56997. Filed May 27, 1957.

*John S. McDaniel, Jr., Esq.,* for the petitioners.
*John R. Moodie, Esq.,* for the respondent.

468

## OPINION.

BLACK, *Judge:* The petitioners during the years 1949, 1950, and 1951 sold approximately 55 lots, which they held for over 6 months as tenants in common. They reported their gain on these sales as long-term capital gain. The respondent determined that the gain, the amount of which is not in dispute, was ordinary income.

Whether the gain was ordinary income or capital gain depends upon whether the lots which were sold were held primarily for sale to customers in the ordinary course of trade or business. Sec. 117 (a).

This is a factual determination, *Arthur E. Wood,* 25 T. C. 468, 473 (1955), and although certain tests such as the purpose or reason for the taxpayer's acquisition of the property and the disposal of it, the

continuity of sales or sales related activity over a period of time, the number, frequency, and substantiality of sales, and the extent to which the owner or his agents engaged in sales activities by developing or improving the property, soliciting customers, and advertising, have been considered relevant, the circumstances of each individual case are controlling.

The principal contention of the petitioners is that they were not engaged in a real estate business; therefore, regardless of whether the properties were held primarily for sale, they would not be so held in the ordinary course of trade or business. They base their contention on the absence of circumstances which usually indicate that a business is being carried on, i. e., the lack of an active sales effort, no customer solicitations, the small amount of time spent in dealing with the properties, and their general passivity regarding the properties.

Although we agree that petitioners were not engaged in the real estate business as it is sometimes conducted, we still think the record shows that they were engaged in that business and that the properties in question were held primarily for sale in the ordinary course of the business. See *Arthur E. Wood, supra.*

The petitioners are the principal stockholders and officers of the lumber company, which supplied all the materials for home construction and for equipping a home, except furniture. They were also the principal stockholders and officers of Model Homes, a speculative building company, which was used as an outlet for the products of the lumber company. The petitioners, although the lots which they purchased and sold in prior years might have been purchased solely for investment, appear to have embarked upon a different course of action when they formed Model Homes in 1942. Cf. *Walter H. Kaltreider,* 28 T. C. 121 (1957). The record, we think, shows they entered into business activities having in mind the promotion of their interests in their principal business, the lumber company. From 1942 to 1951, petitioners acquired land which, after subdivision, totaled about 240 lots. The petitioners were Model Homes's principal source of supply. Of the 155 lots purchased by Model Homes from 1942 to 1953, 89 were purchased from petitioners. Of the 132 purchased by Model Homes from 1945 to 1953, 89 were purchased from petitioners. During the years in question about 55 lots were sold by petitioners, 21 of them being sold to Model Homes.

The lots sold to third parties were sold on the condition that the purchasers would purchase their building material from the lumber company. Also, as stated previously, Model Homes purchased the material for the construction of its homes from the lumber company. These facts, we think, clearly show that the petitioners were selling the

lots for the purpose, at least in part, of promoting their interests in the lumber company. Under these circumstances the sales cannot be said to be the passive liquidation of investment property. On the contrary, their purchase of lots in existing developments and of tracts of land, the subdivision of the tracts, and the sale of lots, when considered in relation to their other activities, constituted a business.

Although Fairgreen Acres was used as a farm for a short while and although Homeland was purportedly purchased to prevent a contractor from using it for storage space for unsightly heavy equipment that might detract from the lumber company's premises, their subsequent subdivision at the instance of Model Homes shows that the purpose for which those properties were held had changed. Cf. *Arthur E. Wood, supra.* They were being held primarily for sale to customers, including Model Homes, in the ordinary course of their business of promoting their interests in the lumber company.

The lack of a real estate license, the lack of solicitations, and the lack of sales activities are not of great significance since, under the circumstances, the sales were substantial. Cf. *Curtis Co.*, 23 T. C. 740, 755–756 (1955), affirmed as to this part (C. A. 3, 1956) 232 F. 2d 167. The gain from the sales for the 3-year period constituted 19 per cent of the gross income of Lakin and 25 per cent of the gross income of Mullendore. Also Model Homes, their largest customer, advertised the houses it built; the petitioners were well known in the community and were known to own lots; and their position with the lumber company undoubtedly gave them valuable contacts with builders and contractors who were in the market for undeveloped lots. In short, there was no need to conduct an active selling campaign to dispose of the lots. Cf. *C. E. Mauldin*, 16 T. C. 698 (1951).

The petitioners cite cases in which the number of sales was greater than is involved herein but where we held that the taxpayer was not engaged in a business. However, in none of the cases are the facts substantially similar to those involved herein.

After reviewing the entire record, we can come only to the conclusion that the lots held by the petitioners as tenants in common and sold by them during the years involved were held by them primarily for sale to customers in the ordinary course of their trade or business. Cf. *Charles E. Reithmeyer*, 26 T. C. 804 (1956); *Walter H. Kaltreider, supra.* The gains resulting from these sales, therefore, are ordinary income rather than long-term capital gain. The determination of the respondent is, accordingly, upheld.

*Decisions will be entered for the respondent for the amounts of the deficiencies in income tax.*[4]

---

[4] Decisions will not be entered for the additions to the tax. See footnote 1, *supra*.