H. G. IRBY, JR., AND EDDICE IRBY, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 61353. Filed August 25, 1958.

*deQuincy V. Sutton, Esq.*, for the petitioners.
*Frederick T. Carney, Esq.*, for the respondent.

PIERCE, *Judge:* Respondent determined deficiencies in income tax, and additions to tax, as follows:

| Year | Deficiency | *Additions to tax* | | |
| | | Sec. 291 (a) | Sec. 294 (d) (1) (A) | Sec. 294 (d) (2) |
| --- | --- | --- | --- | --- |
| 1952 | $22,260.63 | $7,349.58 | $4,272.70 | $2,848.45 |
| 1953 | 785.38 | 196.35 | 63.39 | 42.26 |

As regards the year 1954, the respondent did not determine a deficiency, but rather an overassessment of $28,345.70; and he also determined a net operating loss for said year, which he carried back and allowed as a deduction for the year 1952. In the absence of a determination of deficiency for the year 1954, the tax liability for said year is not before us; and the assignments of error made with respect to said year will not be considered, except as they may have an effect on the liabilities for the years 1952 and 1953.

The issues for decision are:

1. Whether periodic payments made under conditional sale agreements covering various items of construction equipment used in petitioner's business are deductible as "rentals" under section 23 (a) (1) (A) of the 1939 Code; or whether such payments constitute part of the capital cost of such equipment. Also, if it is decided that said periodic payments represent part of the cost of the equipment, the further question is presented as to whether the respondent's determinations respecting (a) allowances for depreciation on such equipment, and (b) the taxation of gains on the disposition of such equipment should be approved.

2. Whether certain business expenses paid by petitioner in the year 1954 may be deducted in the prior year 1953, on the ground that they pertained to work performed in such prior year.

3. Whether additions to tax should be imposed in respect of each of the years involved: (a) For failure to file timely income tax returns; (b) for failure to file declarations of estimated taxes; and (c) for substantial underestimate of estimated taxes.

### FINDINGS OF FACT.

Certain facts have been stipulated. The stipulation of facts, together with the exhibits identified therein, is incorporated herein by reference.

Petitioners are husband and wife residing in Meridian, Mississippi.

They filed joint income tax returns for the years involved with the district director of internal revenue at Jackson, Mississippi.

Petitioner H. G. Irby, Jr. (herein called the petitioner), was a construction contractor who carried on business as a sole proprietor under the name of Irby Construction Company, with principal office in Meridian, Mississippi. At all times here material, he worked as a subcontractor, in performing personal services related to the laying of natural gas pipelines. The record does not disclose when he first started in such business; but there is evidence that he purchased some of his equipment as early as 1945 and 1946.

During the year 1950, petitioner was engaged principally in unloading pipe from railroad cars, and stacking it in yards provided by the owners. In this work, he recruited his own crews, and employed his own equipment.

Beginning in the fall of 1950 and continuing during the years 1951 and 1952, petitioner worked for the most part as a subcontractor for the engineering firm of Ford, Bacon & Davis of New York City. This work was performed under several separate contracts. Principal among these contracts was one performed during the year 1952, under which he engaged in laying a gas pipeline that extended from New Jersey through New York, Connecticut, Rhode Island, and Massachusetts.

During the first half of the year 1953, petitioner operated as a subcontractor for the firm known as Raff Construction Company; and, in this connection, he worked on the installation of a gas pipeline in Maine. Later, in August 1953, he entered into an agreement to act as a subcontractor for Engineering Construction Company of Tulsa, Oklahoma, in laying approximately 19 miles of gas pipeline in Tennessee. Also during said year 1953, he continued to render certain services as a subcontractor for Ford, Bacon & Davis, and for various other parties.

The sources and amounts of petitioner's gross income for the years 1952, 1953, and 1954, as reported on his returns, were as follows:

### 1952

| | | |
|---|---:|---:|
| Gross income from contract services: | | |
| Ford, Bacon & Davis | $327,961.62 | |
| Algonquin Gas Transmission Co | 8,388.72 | |
| Miscellaneous contracts | 14,769.76 | |
| | | $351,120.10 |
| Gain from disposition of equipment used in business | | 8,000.00 |
| Total from business | | 359,120.10 |
| Other gross income: | | |
| Gain from sale of timber (before adjustment for long-term capital gains treatment) | | 3,000.00 |
| Total gross income, per return | | 362,120.10 |

*1953*

Gross income from contract services:

| | |
|---|---|
| Maine | $102, 721. 64 |
| Tennessee | 185, 389. 02 |
| Miscellaneous: | |
| Ford, Bacon & Davis _ _ _ _ _ $16, 688. 58 | |
| Others _ _ _ _ _ 16, 364. 02 | |
| | 33, 052. 60 |
| Other gross income: | |
| (Source unidentified) | 2, 853. 54 |
| Total gross income, per return | 324, 016. 80 |

*1954*

Gross income from contract services:

| | |
|---|---|
| Tennessee _ _ _ _ _ $79, 747. 83 | |
| Texas _ _ _ _ _ 1, 000. 00 | |
| New York _ _ _ _ _ 77, 608. 29 | |
| Miscellaneous _ _ _ _ _ 3, 193. 03 | |
| Total | 161, 549. 15 |
| Gain from disposition of equipment used in business | 43, 068. 56 |
| Total gross income, per return | 204, 617. 71 |

Petitioner had no bookkeeping system, and no books of account which showed debits and credits. His only business records consisted of canceled checks, bank statements, certain invoices, and vouchers. Portions of these were kept at his principal office in Meridian, Mississippi; and others were kept at the various project offices where he was working.

Petitioner filed no income tax return for any year prior to 1951. For the calendar year 1951, he signed an income tax return which he arranged to have prepared for him by a man named R. A. West, who was an assistant project engineer employed by Ford, Bacon & Davis. He presumed that West had filed this return; but he did not know when or where it may have been filed; he retained no copy of the same; and he had no knowledge of the contents of such return, except that it showed no tax to be due.

The joint return of petitioner and his wife for the calendar year 1952 was not filed until November 29, 1954. And their joint return for the calendar year 1953 was not filed until April 11, 1955.

Petitioner did not file any declaration of estimated tax for the year 1952 or for the year 1953.

### Additional Facts re Issue 1.

During the years 1952, 1953, and 1954, petitioner used a large amount of heavy construction equipment in his business, including trucks, tractors, cranes, ditching machines, bulldozers, and flatbed

trailers. A small portion of this equipment was rented for short periods, from other contractors; and, as to this portion of the equipment, no dispute is here involved. The bulk of said equipment, however, was obtained from equipment dealers, under written agreements which in most cases, but not all, were specifically designated as "Conditional Sale Agreement" or "Conditional Sale Contract." A typical agreement of such character identified petitioner as the "purchaser," and the dealer as the "seller." It then described the "goods sold"; specified the "total price" thereof, the amount of petitioner's "cash down payment," and the balance due; and fixed the "installments" to be paid by petitioner against such balance. Such typical agreement also contained the customary recitals for conditional sale contracts, to the effect that title should remain in the seller until the purchase price was fully paid; and that, in the event of any default by the purchaser or any insecurity to the seller, the seller might declare the entire unpaid balance to be immediately due, repossess the property, sell the same, and apply the proceeds against the purchaser's obligation, with the purchaser remaining liable for any unsatisfied balance.

During the years 1952, 1953, and 1954, petitioner paid the following amounts as installments under equipment purchase contracts such as those above described:

| | |
|---|---|
| 1952 | $80, 378. 74 |
| 1953 | 34, 274. 86 |
| 1954 | 77, 543. 97 |

Petitioner, in his income tax returns, described such installments as "equipment purchase payments"; and he claimed deductions therefor as "rentals." He did not claim any depreciation deductions in respect of the equipment. And, whenever any item of such equipment was sold by him, he computed his gain thereon by using as his basis, only the amounts of the future installments which he was required to prepay in order to obtain title for the sale; and he then treated the resulting gain as ordinary income.

The respondent, in his notice of deficiency, disallowed said "rental" deductions claimed by petitioner. He treated the "equipment purchase payments" as nondeductible capital expenditures, representing part of the cost of the equipment; and he allowed petitioner depreciation deductions for each year in respect of such equipment. Also, in cases where items of the equipment were sold by petitioner, he computed petitioner's adjusted basis by making adjustments for depreciation; and he accorded capital gains treatment to any resulting gains. Subsequently, at the trial, the parties stipulated that the list of such equipment contained in Schedule (A) of the notice of deficiency should be supplemented by inclusion of certain additional items shown in Exhibit 8–H.

### *Additional Facts re Issue 2.*

In August 1953, as before stated, petitioner entered into an agreement with Engineering Construction Company of Tulsa, Oklahoma, under which he worked as a subcontractor in laying approximately 19 miles of gas pipeline in Tennessee. Said agreement provided, in substance and so far as here material, that petitioner was to complete the work to the satisfaction of the supervising engineers; that he was to be paid by the prime contractor on a per foot basis, as the work progressed and was accepted by the public utility for which the line was being constructed; and that any extra work, not itemized in the agreement, was to be paid for at the prime contract rate less 10 per cent.

One section of the above-mentioned pipeline had to be laid under the bed of the French Broad River. As to this section, petitioner proceeded to lay the pipe in a trench of 3-foot depth, running partly through sand and partly through rock; but the supervising engineers stopped this work, and insisted that the pipe be laid at a depth of about 21 feet. This caused a dispute between petitioner and the prime contractor, as to who was to pay for the extra work. Such dispute was terminated by what petitioner believed was an agreement of the prime contractor to bear the extra costs. The extra work required additional blasting, and also involved the expenditure of considerable time.

The laying of the pipeline on the Tennessee job was completed on December 23, 1953; and, on said date, the gas was turned into the line. Petitioner's cleanup work, relating to said job, including backfilling over the pipe, repairing fences, clearing rights-of-way, and obtaining releases for property damage, continued until early March 1954. The Tennessee pipeline job was finally accepted by the public utility involved in about May 1954.

Petitioner's total gross income from all sources for the year 1953, per return, was $324,016.80; and of this amount, he reported $185,-386.02 as having been received for work on the Tennessee job. Payments on this Tennessee job were received by him from time to time, as the work progressed and was accepted by the public utility owner; but the larger payments were received as follows:

| | |
|---|---|
| November 30, 1953 | $26,919.06 |
| December 9, 1953 | 35,354.71 |
| December 30, 1953 | 46,693.26 |
| Total | 108,867.03 |

In addition to the above-mentioned amounts received from the Tennessee job in 1953, petitioner claimed a right to further payment for his extra work in laying the pipe at a greater depth under the French

Broad River. The prime contractor disputed such claim; and petitioner thereupon filed suit against it for $26,000. In February 1955, this suit was settled for the sum of $14,000. Petitioner then received said sum, and paid therefrom attorney's fees and expenses in the amount of $5,000.

Petitioner's total business expenses in connection with all his various contract work for the year 1953, as reported and claimed as deductions on his return for that year, were $351,135.66. All these expenses were actually paid in the year 1953, except depreciation of $3,940.11, and except also a group of miscellaneous expenses totaling $37,044.48 which are here involved. These last-mentioned expenses were all incurred in connection with work performed by petitioner in 1953 on the Tennessee pipeline job; but they actually were paid during the period from January through August 1954.

Respondent, in his notice of deficiency, disallowed said $37,044.48 of expenses as deductions for the year 1953; but he did allow the same as deductions for the following year 1954, "since payment was made in such year."

As before stated, petitioner had no books of account which would reflect the use of any particular method of accounting for any year; and there is no evidence as to what accounting method may have been used in his 1951 return, which was the first return ever prepared for him. His delinquent return for the calendar year 1952 was prepared in accordance with the cash receipts and disbursements method of accounting. And his delinquent return for the calendar year 1953 likewise was prepared in accordance with the cash receipts and disbursements method, except for the above-mentioned group of expense items which were paid in the year 1954.

Petitioner at no time sought or obtained the Commissioner's permission to file his 1953 return in accordance with any different accounting method than that used in his 1952 return. Also he did not obtain the Commissioner's permission to employ either the long-term contract method, or any other special method.

*Additional Facts re Issue 3.*

The petitioner, in an affidavit attached to his delinquent 1952 return, attributed his failure to file the same within the prescribed time to erroneous advice respecting the necessity for such filing, alleged to have been received by him from R. A. West who had prepared petitioner's 1951 return. Another affidavit, setting forth the same reason for his delinquency in filing his 1953 return, was attached to that return.

R. A. West was an assistant project engineer for Ford, Bacon & Davis prior to 1952; and thereafter, in 1952, he was employed by petitioner in assembling some of petitioner's vouchers, checks, and bank

statements. Petitioner had the impression that West was a certified public accountant, but not an attorney; and he thought also that West had, prior to 1952, done some preliminary work in setting up records of certain projects of the Ford firm for the use of accountants. Petitioner did not know where West may have been licensed to act as an accountant; and, also, he did not know whether West ever had made any study of Federal tax law.

There is no evidence that West gave any specific advice to petitioner with regard to the filing of declarations of estimated tax.

Respondent, in his notice of deficiency, determined that additions to tax under section 291 (a) of the 1939 Code, should be imposed for the years 1952 and 1953 for failure to file the returns on time. He also determined that, for each of the years 1952 and 1953, additions to tax under both section 294 (d) (1) (A) and section 294 (d) (2) should be imposed, for failure to file declarations of estimated tax and for substantial underestimate of estimated tax.

Petitioner's failure to file a timely income tax return for each of the years 1952 and 1953, and also his failure to file any declaration of estimated tax for each of said years, was not due to reasonable cause.

OPINION.

## I.

The first issue for decision is whether the periodic payments made under conditional sale contracts covering equipment used in petitioner's business are deductible as "rentals" under section 23 (a) (1) (A) of the 1939 Code;[1] or whether such payments constituted nondeductible capital expenditures, representing part of the cost of such equipment.

Based on all the pertinent evidence, as summarized in our Findings of Fact, we conclude that under the conditional sale contracts here involved, petitioner was taking title to the equipment covered by such contracts, and that he was acquiring increased equities in such equipment as his periodic installment payments were made. Cf. *Chicago Stoker Corporation*, 14 T. C. 441. Said contracts did not even purport to be "leases," and the installment payments were not designated as "rents"; but, even if such terminology had been employed, the terms of the instruments as a whole would have led us to the same above-

---

[1] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

(a) EXPENSES.—

(1) TRADE OR BUSINESS EXPENSES.—

(A) In General.—All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including * * * rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity. * * *

mentioned conclusions. Cf. *Estate of Delano T. Starr*, 30 T. C. 856; and *Holeproof Hosiery Co.*, 11 B. T. A. 547. Accordingly, we hold that said periodic payments constituted capital expenditures which are not deductible from gross income; and the respondent's determinations to this effect are approved.

Having thus approved respondent's determinations that the installment payments should be capitalized, we approve also his related determinations, (a) as to the allowances for depreciation on such equipment, and (b) as to the computation and taxation of petitioner's gains from the sale of certain items of the equipment. Petitioners have submitted no evidence tending to show error in such determinations. However, the parties have stipulated that certain additional equipment, not mentioned in Schedule (A) of the notice of deficiency but described in Exhibit 8–H, should be accorded similar treatment; and this will be done in the computations to be made herein under Rule 50.

The several holdings above made are applicable, not only directly to the years 1952 and 1953, but also to the year 1954 for which respondent determined a net operating loss and allowed as a carryback deduction for the year 1952.[2]

## II.

The next question for decision is whether certain business expenses totaling $37,044.48, which petitioner actually *paid* during the calendar year 1954, should be allowed as deductions for the prior calendar year 1953. There is no dispute that the various items of such expense qualify for deduction, either in one of said years or the other. The selection of the particular year therefore must depend upon the method of accounting which is applicable.

The accounting methods most commonly used for income tax purposes are the cash receipts and disbursements method, and the accrual method. Another special method used by some contractors is the long-term contract method, involving the percentage of completion basis and the completed contract basis. Section 41 of the 1939 Code prescribes the general rule, that the net income shall be computed upon the basis of the taxpayer's annual accounting period, in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; provided however that, "if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made in accordance with such method as in the opinion of the Commissioner does clearly reflect the income."

[2] Petitioner abandoned at the trial, an assignment of error respecting another adjustment of respondent's which affected the amount of said net operating loss carryback. This abandoned assignment pertained to disallowance of a loss in 1954, respecting an airplane used in petitioner's business.

Here, the petitioner did not maintain any books of account which reflected any particular method of accounting. Also, the evidence does not disclose what method of accounting was used in preparing his 1951 return; but his 1952 return, which is the earliest of his returns in evidence, was prepared in accordance with the cash receipts and disbursements method—it having been based on income and expenditures disclosed by bank deposits, canceled checks, and paid vouchers. Likewise, petitioner's 1953 return was prepared in accordance with the cash receipts and disbursements method, except for the particular items of expense totaling $37,044.48 which are here involved. In these circumstances, the Commissioner in effect determined that petitioner's net income should be computed in accordance with the cash receipts and disbursements method; for he not only picked up the income in the year actually received, but he also allowed deductions for the business expenses only in those years in which they actually were paid. Under section 41 the Commissioner was vested with a wide discretion. See *Automobile Club* v. *Commissioner*, 353 U. S. 180. We do not think that his action, in requiring uniform adherence to the cash method which petitioner had used both in his 1952 return and also for most items in his 1953 return, exceeded the permissible limits of that discretion.

Petitioner has not contended that any of his returns were filed in accordance with either the accrual method or the long-term contract method of accounting; and also he has made no contention that his income and deductions from *all sources* for the year 1953 should be computed in accordance with either of these methods. Rather, he contends that, irrespective of any particular method of accounting, the group of expenses here involved were incurred in connection with the Tennessee job in the year 1953; that most of the payments for this job also were received and became taxable in the year 1953; and, therefore, that such expenses and such income "must go hand-in-hand," so far as the year of recognition is concerned, if net income is to be clearly reflected. We think that such argument is unsound.

Under either the cash or the accrual method, it is possible that expenses, paid or accruable, may be deductible in a year that is either prior or subsequent to the year in which the income related to such expenses is includible. See *Bressner Radio, Inc.*, 28 T. C. 378, on appeal (C. A. 2). This is simply the result of the facts, that taxable income must be computed on an annual basis, and that the computation of taxable income does not necessarily follow business accounting practices. *Guardian Investment Corporation* v. *Phinney*, (C. A. 5) 253 F. 2d 326. The income of the present petitioner was derived from personal services as a contractor; he did not hold merchandise inventories which would require the use of the accrual method; and, in our

opinion, his income could under the facts here present be clearly reflected by use of the cash method.

Moreover, the particular expenses here involved represent only about 10 per cent of the total business expenses claimed by petitioner on his return for the year 1953. Such total expenses were incurred in connection with several separate contracts. We think that, if petitioner's "hand-in-hand" method were to be approved, it necessarily would have to be applied consistently to all of his contract income and expenses. But he has not produced sufficient evidence regarding most of his receipts and expenses, so that computations necessary to the application of such method could be made; nor has he either contended or shown that a consistent application of such method would produce a more favorable result.

We approve respondent's determination to the effect that the above-mentioned items of expense are deductible only in the year 1954 when paid, and not in the year 1953.

## III.

Finally, we shall consider the additions to tax.

(A) Section 291 (a) of the 1939 Code imposes an addition to the tax in case of failure to make and file a required return within the time prescribed, unless it is shown that such failure is due to reasonable cause and not due to willful neglect.

In the instant case, the returns of petitioner and his wife for both 1952 and 1953 were delinquent by many months; and the excuse offered by petitioner for such delinquencies was that he had relied upon advice received from R. A. West (now conceded to have been erroneous advice), to the effect that no return for either of these years was necessary. Petitioner testified that his impression, from conversations had with R. A. West, was that "so long as he worked for this company [Ford, Bacon & Davis, for which he worked from 1951 to 1954] * * * [he] could go without filing a tax return." Exactly what West said, when he said it, what records or other information he relied on, and whether his statements applied also to the reporting of income from the Tennessee contract, are not clear.

Such excuse must be rejected. No proof was presented that West was qualified to advise petitioner regarding the filing of income tax returns, or that petitioner's reliance on him was well placed. *Walter H. Kaltreider*, 28 T. C. 121, affd. 255 F. 2d 833 (C. A. 3.) Indeed, if West actually gave the advice attributed to him, it would appear to be self-evident that he was not qualified. Moreover as regards the year 1952, petitioner had gross income from the sale of timber which, even without his income from contract services, was sufficient to require the filing of a return for that year.

We hold that the failure to file a timely return for each of the years 1952 and 1953, has not been shown to be due to reasonable cause. Accordingly, we approve the imposition of an addition to tax for each of said years under section 291 (a).

(B) Section 294 (d) (1) (A) imposes an addition to the tax for failure to make and file a declaration of estimated tax, unless such failure is due to reasonable cause and not due to willful neglect.

Here, petitioner filed no declaration of estimated tax for either of the years involved. He presented no specific excuse for such failure; and, even if we were to assume that the alleged advice from West applied also to the nonfiling of declarations of estimated tax, we would, for the reasons above expressed, regard such excuse to be inadequate.

We hold that the failure to file declarations of estimated tax for the years 1952 and 1953, has not been shown to be due to reasonable cause. Therefore, we approve the imposition of an addition to the tax for each of said years, under section 294 (d) (1) (A).

(C) Section 294 (d) (2) imposes an addition to the tax for substantial underestimate of estimated tax.

Petitioner contends that this section is not applicable in cases, like the present, where no declaration of estimated tax has been filed and, hence, no expressed estimate has been made by the taxpayer; and that the only addition to tax which may be imposed, so far as the absence of a declaration is concerned, is that provided by section 294 (d) (1) (A). In support of this position, petitioner has cited several District Court decisions; and, since the filing of his brief herein, the Court of Appeals for the Sixth Circuit has adopted the same position. *Acker* v. *Commissioner*, (C. A. 6) 258 F. 2d 568, reversing T. C. Memo. 1957-17.

This Court, however, has uniformly held that section 294 (d) (2) is applicable, not only where a declaration of estimated tax has been filed and the amount of the estimate is inadequate, but also where no declaration of estimated tax has been filed; and that, in either of these situations, the section is self-executing, regardless of excusable neglect. We have further held, in cases where no declaration of estimated tax has been filed, that the amount of the estimated tax for purposes of this section is zero; and that imposition of an addition to tax under section 294 (d) (1) (A) does not bar the concurrent imposition of an addition under section 294 (d) (2). *G. E. Fuller*, 20 T. C. 308; *H. R. Smith*, 20 T. C. 663; *Fred N. Acker*, 26 T. C. 107.

The position of this Court finds support in the Conference Report to the House of Representatives in the Current Tax Payment Act of 1943,[3] and also in the applicable Treasury regulations which are

[3] " * * * In the event of a failure to file any declaration where one is due, the amount of the estimated tax for the purposes of this provision will be zero. * * *" Conference Rept., H. Rept. No. 510, 78th Cong., 1st Sess., p. 56 (reprinted in 1943 C. B. 1351, 1372).

couched in the language of said Conference Report.[4]  Furthermore, this position has recently been approved by two Courts of Appeals: *Patchen* v. *Commissioner* (C.A. 5) 258 F. 2d 544, affirming on this issue 27 T. C. 592; and *Kaltreider* v. *Commissioner,* (C. A. 3) 255 F. 2d 833, affirming 28 T. C. 121.

In this circumstance, we continue to adhere to the position which we have heretofore taken.  Accordingly, we here approve the imposition of an addition to the tax under section 294 (d) (2), for each of the years involved.

*Decision will be entered under Rule 50.*

