T.C. Memo. 2001-261


UNITED STATES TAX COURT


JERRY J. AND SUSAN N. LEBOUEF, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 15785-99.                    Filed October 3, 2001.


       R determined a deficiency for Ps' 1993 taxable
year based primarily on disallowance of:  (1) Amounts
claimed for cost of goods sold with respect to a sole
proprietorship and (2) a loss claimed with respect to a
partnership interest.

       <u>Held</u>:  Ps have failed to overcome their initial
reporting of $244,270 as gross receipts from their sole
proprietorship and, for lack of substantiation, are not
entitled to offset such receipts by an identical amount
for cost of goods sold.

       <u>Held</u>, <u>further</u>, Ps are not entitled to deduct a
loss of $19,791 allegedly attributable to their
interest in a partnership.

       <u>Held</u>, <u>further</u>, Ps are liable for the sec.
6651(a)(1), I.R.C., addition to tax for failure timely
to file their 1993 income tax return.

Held, further, Ps are liable for the sec. 6662(a), I.R.C., accuracy-related penalty.

Larry D. Vince, for petitioners.

Nguyen-Hong K. Hoang, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

NIMS, Judge:  Respondent determined a Federal income tax deficiency for petitioners' 1993 taxable year in the amount of $93,957.  Respondent also determined an addition to tax of $23,161 pursuant to section 6651(a)(1) and an accuracy-related penalty of $18,791 under section 6662(a).

The issues for decision are:

(1) Whether petitioners, having reported gross receipts of $244,270 on their 1993 Schedule C, Profit or Loss From Business, are entitled to offset such receipts by an identical amount as cost of goods sold;

(2) whether petitioners are entitled to deduct a claimed loss of $19,791;

(3) whether petitioners are liable for the section 6651(a)(1) addition to tax for failure timely to file their 1993 income tax return; and

(4) whether petitioners are liable for the section 6662(a) accuracy-related penalty.

Additional adjustments to petitioners' exemptions, itemized deductions, self-employment tax, and deduction for self-employment tax are computational in nature and will be resolved by our holdings on the foregoing issues.

Unless otherwise indicated, all section references are to sections of the Internal Revenue Code in effect for the year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

To facilitate disposition of the above issues, we shall first make general findings of fact and then combine our findings and opinion with respect to each issue.

I.  General Findings of Fact

Some of the facts have been stipulated and are so found. The stipulations of the parties, with accompanying exhibits, are incorporated herein by this reference.  At the time the petition was filed in this case, petitioners resided in Newport Beach, California.

Petitioners requested two extensions of time to file their 1993 Form 1040, U.S. Individual Income Tax Return, both of which were granted.  Taking these extensions into account, petitioners' return was due on October 15, 1994.  Respondent received petitioners' 1993 Form 1040 on December 15, 1995.  The return was signed by both petitioners and by their preparer Anthony Aulisio, Jr., CPA.  Attached to their 1993 return, petitioners included

both a Schedule C, Profit or Loss From Business, for LeBouef Company and a Form 4797, Sales of Business Property, relating to Toro Leasing Company.

On the Schedule C, petitioner Jerry LeBouef is listed as the sole proprietor of LeBouef Company, and the principal business of the entity is stated to be "CONSTRUCTION". Additionally, the question "Did you 'materially participate' in the operation of this business during 1993?" is responded to with a check in the box marked "Yes". On the Schedule C, petitioners reported gross receipts of $244,270 and cost of goods sold of $244,270. The explanation given for the cost of goods sold figure is "PROJECT COSTS". After deduction of $600 in business expenses, LeBouef Company is shown as having incurred a net loss of $600.

The record also contains petitioners' returns for the years immediately preceding and following the period at issue. The Schedule C for LeBouef Company attached to petitioners' 1992 Form 1040 shows gross receipts of $60,000, cost of goods sold "PROJECT COSTS" of $55,000, and business expenses of $1,763, for a net profit of $3,237. In 1994, petitioners reported gross receipts for LeBouef Company of $24,500, cost of goods sold "PROJECT COSTS" of $24,500, business expenses of $14,500, and a net loss of $14,500.

On their Form 4797 for 1993, petitioners claimed a loss of $19,791 with respect to business property of Toro Leasing

Company.  During 1993, Toro Leasing was a partnership in which Mr. LeBouef and Edward Silveri were each 50 percent general partners who shared equally in profits and losses.  Toro Leasing filed a Form 1065, U.S. Partnership Return of Income, reflecting a Form 4797 loss of $39,582 on sales or exchanges of business property.  Attached is a Schedule K-1, Partner's Share of Income, Credits, Deductions, etc., showing $19,791 as Mr. LeBouef's portion of this loss.

At some time prior to or during April of 1998, respondent commenced an examination of petitioners' 1993 return.  Revenue Agent Ellen Nierich conducted this examination, which culminated in the issuance of a notice of deficiency to petitioners on July 6, 1999.  The adjustments made in this notice are the subject of the present litigation.

II.  Burden of Proof

We begin with a threshold observation regarding burden of proof.  As a general rule, the Commissioner's determinations are presumed correct, and the taxpayer bears the burden of proving otherwise.  Rule 142(a).  Recently enacted section 7491, however, may operate in specified circumstances to place the burden on the Commissioner.  Because petitioners make certain statements on brief that can be interpreted as an appeal to the benefits of section 7491, we emphasize that the statute is applicable only to court proceedings that arise in connection with examinations

commencing after July 22, 1998. Internal Revenue Service Restructuring & Reform Act of 1998, Pub. L. 105-206, sec. 3001(c), 112 Stat. 685, 727. Since the record here indicates that the examination in this case was ongoing by at least April of 1998, the burden remains on petitioners to establish that respondent's determinations are erroneous.

III. Schedule C Reporting

A. General Rules

As a basic premise, the income of a sole proprietorship must be included in calculating the income and tax liabilities of the individual owning the business. Sec. 61(a)(2). The net profit or loss of such an enterprise is generally computed on Schedule C by subtracting cost of goods sold and ordinary and necessary business expenses from the gross receipts of the venture.

In this connection, taxpayers are required to maintain records sufficient to establish the existence and amount of all items reported on the tax return, including both income and offsets or deductions therefrom. Sec. 6001; Hradesky v. Commissioner, 65 T.C. 87, 89-90 (1975), affd. 540 F.2d 821 (5th Cir. 1976); sec. 1.6001-1(a), Income Tax Regs. Additionally, statements made on a tax return signed by the taxpayer have long been considered admissions, and such admissions are binding on the taxpayer absent cogent evidence indicating they are wrong. Waring v. Commissioner, 412 F.2d 800, 801 (3d Cir. 1969), affg.

T.C. Memo. 1968-126; <u>Lare v. Commissioner</u>, 62 T.C. 739, 750 (1974), affd. without published opinion 521 F.2d 1399 (3d Cir. 1975); <u>Kaltreider v. Commissioner</u>, 28 T.C. 121, 125-126 (1957), affd. 255 F.2d 833 (3d Cir. 1958); <u>Smith v. Commissioner</u>, T.C. Memo. 1997-109, affd. without published opinion 129 F.3d 1260 (4th Cir. 1997); <u>Rankin v. Commissioner</u>, T.C. Memo. 1996-350, affd. 138 F.3d 1286 (9th Cir. 1998); <u>Sirrine Bldg. No. 1 v. Commissioner</u>, T.C. Memo. 1995-185, affd. without published opinion 117 F.3d 1417 (5th Cir. 1997).

B. <u>Contentions of the Parties</u>

Throughout this litigation and the earlier examination of their return, petitioners have maintained that the sole proprietorship, LeBouef Company, was inactive during the taxable year 1993 and neither earned any income nor incurred any costs of goods sold. Rather, petitioners contend that the gross receipts reflected on their Schedule C were in fact income of LeBouef Company, Inc., a corporate entity owned by Mr. LeBouef. Petitioners explain that prior to 1987 Mr. LeBouef operated his construction enterprise as a sole proprietorship and thereafter incorporated the business as LeBouef Company, Inc. They allege, however, that certain customers mistakenly continued to use the sole proprietorship's employer identification number when reporting payments for work performed to the Internal Revenue Service (IRS) on Forms 1099. Petitioners further assert that

they believed such occurred in 1993 to the extent of $244,270, and they label their Schedule C reporting of this amount as gross receipts and then zeroing out that figure by an identical cost of goods sold as "disclosure" and as "a practical solution" for dealing with their situation.

Respondent, in contrast, characterizes this case as involving an unrebutted admission of income coupled with a failure to substantiate expenditures subtracted therefrom.

C. Discussion

On the record before us, we conclude that petitioners have failed to meet their burden of establishing that LeBouef Company was inactive and did not receive the reported amounts in 1993. As we explain below, our conclusion rests on two primary bases: (1) The absence of corroborating evidence beyond the testimony of Mr. LeBouef and Mr. Aulisio that the sole proprietorship did not operate in 1993, and (2) the presence of a bank deposits analysis by respondent indicating income significantly greater than petitioners' reported income would be if the $244,270 were eliminated.

First, Mr. LeBouef and Mr. Aulisio testified that LeBouef Company was not active in 1993. Neither, however, proved convincing. Mr. LeBouef was generally vague and could not specifically identify the genesis of either the $244,270 gross receipts or the $600 business deduction recorded on his Schedule

C. Mr. Aulisio testified that it was common practice in the accounting industry, in order to deal with Form 1099 amounts misreported to the IRS by third parties, to "make full disclosure by putting the exact same number in and out." Aside from the questionable validity of this statement, we find it noteworthy that Mr. Aulisio did more than just report and subtract the same numerical figure. He affirmatively labeled the cost of goods sold "PROJECT COSTS", a term which connotes active operations to a far greater extent than it discloses the alleged situation of inactivity.

Webster's defines "disclose" as "to expose to view" and "to make known: open up to general knowledge * * *; esp: to reveal in words (something that is secret or not generally known): DIVULGE". Webster's Third New International Dictionary 645 (1976). Accordingly, we take issue with petitioners' and Mr. Aulisio's characterization of the Schedule C reporting as a form of disclosure to the IRS. To report that a particular entity earned gross receipts, incurred project costs and business expenses, and operated at a loss, all with the material participation of its proprietor, hardly exposes, makes known, reveals, or divulges that the entity was inactive, that payments were misreported by third parties, and that the income shown on the Schedule C was actually that of a corporation. If the true intent of petitioners and Mr. Aulisio had been to disclose the

facts now postulated, it seems unlikely that the presentation of information in petitioners' Schedule C is the vehicle they would have selected.

Furthermore, the record is devoid of evidence which would lend credence to petitioners' purported reason for showing $244,270 of gross receipts in the first instance.  None of the supposedly erroneous Forms 1099 have been produced.  Mr. Aulisio even testified that he simply relied on the word of petitioners' bookkeeper in determining the total amount, and he claimed to have seen only one Form 1099 representing a small percentage of the sum in question.  Significantly, the bookkeeper was not called as a witness, and we cannot assume that his or her testimony would have been favorable to petitioners.  In addition, during examination of petitioners' 1993 return and upon hearing Mr. Aulisio's explanation at that time, Ms. Nierich checked the IRS records but could find no Forms 1099 issued to the sole proprietorship.

In fact, the only documents in the record which petitioners claim support their position are the combined annual reports of LeBouef Company and LeBouef Company, Inc., for 1992 and 1993.  These items, however, are of little use to the Court since the balance sheets, income statements, and cashflow statements included therein do not differentiate between the entities in their presentation of financial data.  Also, we note that to the

extent the financials indicate that one or both of the entities operated at a loss, a loss is not necessarily equivalent to the absence of taxable activities.  Moreover, although the 1992 report contains a note stating that the sole proprietorship was inactive in 1992, no similar statement was included in the 1993 report and even the 1992 remark is entitled to little weight here because of the difficulty in reconciling that assertion with other evidence in the record and because of the inherent nature of annual reports.

With regard to evidentiary discrepancies, petitioners' own return for 1992 reflects a net profit for the proprietorship of $3,237 in that year, thus obfuscating any potential correlation between claimed inactivity for financial business purposes and the receipt of taxable income.  Additionally, and further calling into question claims that any inactivity which might have existed in 1992 continued throughout 1993, the record contains a copy of a check for $160,000 dated April 21, 1993, and issued to "LE BOUEF COMPANY" by "The CIT Group/Equipment Financing, Inc."  The parties stipulated that this check represented "a loan made to LeBouef Company sole proprietorship for the purpose of purchasing construction equipment."  Again, equipment purchases seem difficult to square with claims of inactivity.

As concerns the nature of annual reports in general, such reports are derived from the representations of management.  And, while financial statements are often verified through audit, to a lesser or greater extent, we have no information as to what, if any, steps were taken to check the proprietorship's claimed inactivity in 1992 or even as to what exactly was meant by use of the term "inactive" within the context of the annual report.

We next turn to the implications of respondent's bank deposits analysis.  In the course of her examination of petitioners' 1993 return, Ms. Nierich performed a bank deposits analysis in an attempt to verify petitioners' gross receipts and income.  Bank deposits are considered prima facie evidence of income, and a bank deposits analysis typically encompasses the following:  (1) A totaling of bank deposits; (2) the elimination from such total of any amounts derived from duplicative transfers or nontaxable sources of which the Commissioner has knowledge; and (3) the further reduction of the adjusted total by any deductible or offsetting expenditures of which the Commissioner is aware.  Clayton v. Commissioner, 102 T.C. 632, 645-646 (1994); DiLeo v. Commissioner, 96 T.C. 858, 868 (1991), affd. 959 F.2d 16 (2d Cir. 1992).  The burden rests on the taxpayer to prove additional nontaxable sources for deposits and to substantiate greater allowable expenditures.  Rule 142(a); Clayton v. Commissioner, supra at 645.

During 1993, four bank accounts were maintained as personal accounts of petitioners, and three were maintained in the name of the sole proprietorship. Total deposits of $943,147 were made into these accounts in 1993. After subtracting $281,708 for interaccount transfers, $269,551 for loans, $30 for overdrafts, and $7,023 for other nontaxable items, Ms. Nierich calculated net taxable deposits of $384,835. Excluding the $244,270 of gross receipts listed on the LeBouef Company Schedule C, petitioners reported total gross income on their 1993 return of less than $60,000, a difference of more than $300,000 when compared to the bank deposits analysis.

While respondent does not treat this as an unreported income case and is not attempting to tax petitioners on receipts not shown in their own return, the analysis performed does buttress the conclusion that petitioners and/or their sole proprietorship received substantial moneys which would escape taxation if we were to accede to their version of the facts before us. Furthermore, we note that although petitioners dispute several aspects of the bank deposits analysis, they have offered no documentary evidence tracing any particular deposits to nontaxable sources and, thus, have not substantiated their allegations that certain additional amounts should be treated as nontaxable.

To summarize, petitioners have failed to overcome their initial reporting of $244,270 as gross receipts of their sole proprietorship. Moreover, because petitioners also readily concede that they have no substantiation for the identical amount claimed as cost of goods sold, we sustain respondent's determination with respect to the adjustment to petitioners' Schedule C income.

## IV.  Partnership Loss

As previously indicated, petitioners deducted on their 1993 return $19,791, representing their 50-percent share of a loss allegedly incurred by Toro Leasing on a disposition of business property. Respondent disallowed the claimed loss in the notice of deficiency on the grounds that petitioners failed to "establish that the amount shown was (a) a loss, and (b) sustained by you". Petitioners' position on this issue is that they "are entitled to rely on the K-1 from Toro Leasing, a partnership, as adequate substantiation for the loss". Petitioners apparently believe that because Ms. Nierich did not audit the partnership, the Schedule K-1 is not subject to challenge. Existing caselaw, however, belies petitioners' interpretation of the burden to be borne by taxpayers in this situation.

The parties stipulated that "Toro Leasing is not governed by the provisions in the Tax Equity and Fiscal Responsibility Act of

1982 (TEFRA) embodied in subchapter C of chapter 63 of the Internal Revenue Code." Toro Leasing falls within the "small partnership" exception contained in section 6231(a)(1)(B)(i) and thus is not under the purview of the unified partnership-level audit procedures implemented by TEFRA. In such circumstances, respondent has no obligation to conduct an audit of the partnership and, as the following cases illustrate, may demand that the individual taxpayer substantiate specific facts underlying items allegedly derived from partnership activities.

For example, in Johnson v. Commissioner, T.C. Memo. 1999-412, the taxpayers claimed partnership losses. After expressly assuming that the partnerships at issue were small partnerships within the meaning of section 6231(a)(1), we reasoned:

> Section 6001 requires that a taxpayer liable for any tax shall maintain such records, render such statements, make such returns, and comply with such regulations as the Secretary may from time to time prescribe. To be entitled to a deduction, therefore, a taxpayer is required to substantiate the deduction through the maintenance of books and records.
>
> Petitioner has not established that the entities in question incurred a loss in 1992, or any other year. At most, petitioner has established that the partnership entities defaulted on the debt in the amount of $2,590,001 in 1992. Even if petitioner had established that the partnerships had incurred a loss, petitioner would not be entitled to a flow-through loss deduction as petitioner has not established his bases in his partnership interests. [Id.]

Similarly, in Bukove v. Commissioner, T.C. Memo. 1991-76, the taxpayer claimed investment tax credits attributable to various partnership interests, some TEFRA and some non-TEFRA. We stated:

> To the extent that the claimed ITC is attributable to one or more non-TEFRA partnerships, petitioner must prove (1) the identity of the partnership through which the ITC is claimed; (2) the identity, cost, and date placed in service of any qualifying property; and (3) whether the partnership used the property in a trade or business. * * *

> Petitioner introduced no evidence regarding the source of the ITC's, other than * * * [petitioner's return preparer's] blanket assertion that they were generated by Dickinson and NDL. Petitioner introduced no evidence to establish what qualifying property was acquired, that the property was ever placed in service, or that the property was actually used in a trade or business. No partnership records were presented and no partnership personnel testified. Rather, petitioner's evidence consisted of vague testimony * * * [Id.]

With respect to the case at bar, the record is equally bereft of evidence that could provide a factual underpinning of the type demanded in Johnson v. Commissioner, supra, and Bukove v. Commissioner, supra. Contrary to petitioners' assertions, it has long been held that statements made in tax returns do not constitute proof of the transactions underlying the reported figures. Seaboard Commercial Corp. v. Commissioner, 28 T.C. 1034, 1051 (1957); Halle v. Commissioner, 7 T.C. 245, 247, 249-250 (1946), affd. 175 F.2d 500 (2d Cir. 1949). Accordingly, the Schedule K-1 on which petitioners rely cannot be regarded as more than an assertion of their claim. We also note that Mr. Aulisio

prepared both the partnership return and petitioners' individual return, making it particularly difficult to construe either as corroboration for the other.

Petitioners also point out that the combined financial report for LeBouef Company and LeBouef Company, Inc., contains an unaudited financial statement for Toro Leasing reflecting a line item of $104,747 for "Loss on disposal of fixed assets". However, such statement again is merely a representation by management and falls far short of proving that specific business property was disposed of at a loss correlating to that shown on the Schedule K-1 and petitioners' Form 4797.

We simply lack any documentary evidence, such as receipts, bills of sale, or partnership books and records, to affirmatively establish that the items of business property listed on the partnership return were in fact acquired and sold at the amounts claimed. Hence, petitioners have failed to establish even that the purported loss was sustained by Toro Leasing. We hold that petitioners are not entitled to deduct the $19,791 reported on their Form 4797.

V.  Section 6651(a)(1) Addition to Tax

Section 6651(a)(1) imposes an addition to tax for delinquency in filing returns and provides in relevant part as follows:

SEC. 6651.  FAILURE TO FILE TAX RETURN OR TO PAY TAX.

(a) Addition to the Tax.--In case of failure--

(1) to file any return required under authority of subchapter A of chapter 61 * * * , on the date prescribed therefor (determined with regard to any extension of time for filing), unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the amount required to be shown as tax on such return 5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate;* * *

The Supreme Court has characterized the foregoing section as imposing a civil penalty to ensure timely filing of tax returns and as placing on the taxpayer "the heavy burden of proving both (1) that the failure did not result from 'willful neglect,' and (2) that the failure was 'due to reasonable cause'", in order to escape the penalty.  United States v. Boyle, 469 U.S. 241, 245 (1985).  "Willful neglect" denotes "a conscious, intentional failure or reckless indifference."  Id.  "Reasonable cause" correlates to "ordinary business care and prudence".  Id. at 246 & n.4; sec. 301.6651-1(c)(1), Proced. & Admin. Regs.

Here, petitioners did not file their tax return for 1993 until December of 1995.  The parties have also stipulated that the return was due, taking extensions into account, on October 15, 1994.  Since petitioners have offered no explanation for the untimeliness, either at trial or on brief, they have failed to

establish any reasonable cause.  We therefore hold that petitioners are liable for the section 6651(a)(1) delinquency addition to tax.

VI.  Section 6662(a) Accuracy-Related Penalty

Subsection (a) of section 6662 imposes an accuracy-related penalty in the amount of 20 percent of any underpayment that is attributable to causes specified in subsection (b).  Subsection (b) of section 6662 then provides that among the causes justifying imposition of the penalty are:  (1) Negligence or disregard of rules or regulations and (2) any substantial understatement of income tax.

"Negligence" is defined in section 6662(c) as "any failure to make a reasonable attempt to comply with the provisions of this title", and "disregard" as "any careless, reckless, or intentional disregard."  Case law similarly states that "'Negligence is a lack of due care or the failure to do what a reasonable and ordinarily prudent person would do under the circumstances.'"  Freytag v. Commissioner, 89 T.C. 849, 887 (1987) (quoting Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967), affg. on this issue 43 T.C. 168 (1964) and T.C. Memo. 1964-299), affd. 904 F.2d 1011 (5th Cir. 1990), affd. 501 U.S. 868 (1991).  Pursuant to regulations, "'Negligence' also includes

any failure by the taxpayer to keep adequate books and records or to substantiate items properly." Sec. 1.6662-3(b)(1), Income Tax Regs.

A "substantial understatement" is declared by section 6662(d)(1) to exist where the amount of the understatement exceeds the greater of 10 percent of the tax required to be shown on the return for the taxable year or $5,000 ($10,000 in the case of a corporation). For purposes of this computation, the amount of the understatement is reduced to the extent attributable to an item: (1) For which there existed substantial authority for the taxpayer's treatment thereof, or (2) with respect to which relevant facts were adequately disclosed on the taxpayer's return or an attached statement and there existed a reasonable basis for the taxpayer's treatment of the item. See sec. 6662(d)(2)(B).

An exception to the section 6662(a) penalty is set forth in section 6664(c)(1) and reads: "No penalty shall be imposed under this part with respect to any portion of an underpayment if it is shown that there was a reasonable cause for such portion and that the taxpayer acted in good faith with respect to such portion."

Regulations interpreting section 6664(c) state:

> The determination of whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all pertinent facts and circumstances. * * * Generally, the most important factor is the extent of the taxpayer's effort to assess the taxpayer's proper tax liability. * * * [Sec. 1.6664-4(b)(1), Income Tax. Regs.]

Furthermore, reliance upon the advice of an expert tax preparer may, but does not necessarily, demonstrate reasonable cause and good faith in the context of the section 6662(a) penalty.  See id.; see also Freytag v. Commissioner, supra at 888.  Such reliance is not an absolute defense, but it is a factor to be considered.  See Freytag v. Commissioner, supra at 888.  In order for this factor to be given dispositive weight, the taxpayer claiming reliance on a professional must show, at minimum, that (1) the preparer was supplied with correct information and (2) the incorrect return was a result of the preparer's error.  See, e.g., Westbrook v. Commissioner, 68 F.3d 868, 881 (5th Cir. 1995), affg. T.C. Memo. 1993-634; Cramer v. Commissioner, 101 T.C. 225, 251 (1993), affd. 64 F.3d 1406 (9th Cir. 1995); Ma-Tran Corp. v. Commissioner, 70 T.C. 158, 173 (1978); Pessin v. Commissioner, 59 T.C. 473, 489 (1972); Garcia v. Commissioner, T.C. Memo. 1998-203, affd. without published opinion 190 F.3d 538 (5th Cir. 1999).

The notice of deficiency issued to petitioners asserted applicability of the section 6662(a) penalty on account of both negligence and/or substantial understatement.  (The notice also referenced substantial valuation overstatement as an additional alternative ground, see sec. 6662(b)(3), but since valuation was not a focus of this case, we disregard the apparent boilerplate reference.)  Petitioners seek to avoid this penalty on the basis

of professional reliance and information disclosure.  Petitioners assert that they relied upon Mr. Aulisio and, as previously indicated, characterize their situation as one of "full disclosure".  We, however, disagree with petitioners' assessment that their actions and reporting were sufficient to avoid the penalty.

First, we reiterate that petitioners' method of reporting fell far short of "disclosing" relevant facts regarding the proprietorship's alleged inactivity to respondent.  The return also did not reveal facts underlying the loss deduction.  Petitioners failed to maintain adequate records to support the amounts claimed on their return.  Moreover, there exists no substantial authority for reducing income either by costs or by a loss that cannot be substantiated.  Given these facts, we conclude that unless petitioners are entitled to relief under the section 6664(c) exception, petitioners are liable for the accuracy-related penalty on account of negligence and substantial understatement.

Turning then to the question of reasonable cause, we further conclude that petitioners have failed to establish exculpatory reliance on Mr. Aulisio.  Most importantly, there has been no showing that Mr. Aulisio was provided with accurate information such that any errors are attributable to him and not to petitioners.  Mr. Aulisio admits that the figures reported for

Schedule C gross receipts and cost of goods sold were based on oral representations of petitioners' bookkeeper.  No indication has been given as to what documentation led to the partnership loss deduction.  The record is silent as to petitioners' personal role in supplying information.  We do not know whether petitioners, before signing their Form 1040, even questioned their preparer as to why an allegedly inoperative business was returned in such a manner.  In sum, we cannot with any confidence say that petitioners took reasonable care in attempting to ascertain their proper tax liability.  We hold that petitioners are liable for the section 6662(a) accuracy-related penalty.

To reflect the foregoing,

<u>Decision will be entered for respondent</u>.