**ESTATE OF Delano T. STARR, Deceased, Mary W. Starr, Executrix, and Mary W. Starr, Petitioners,**

**v.**

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 16268.**

United States Court of Appeals Ninth Circuit.

Dec. 29, 1959.

Roy B. Woolsey, Los Angeles, Cal., for petitioners.

Charles K. Rice, Asst. Atty. Gen., James P. Turner, Lee A. Jackson, Robert N. Anderson, Davis W. Morton, Jr., Attys., Dept. of Justice, Washington, D. C., for respondent.

Before CHAMBERS, HAMLEY and JERTBERG, Circuit Judges.

CHAMBERS, Circuit Judge.

Yesterday's equities in personal property seem to have become today's leases. This has been generated not a little by the circumstance that one who leases as a lessee usually has less trouble with the federal tax collector. At least taxpayers think so.

But the lease still can go too far and get one into tax trouble. While according to state law the instrument will probably be taken (with the conse-

quent legal incidents) by the name the parties give it, the internal revenue service is not always bound and can often recast it according to what the service may consider the practical realities.[1] We have so held in Oesterreich v. Commissioner, 9 Cir., 226 F.2d 798, and Commissioner of Internal Revenue v. Wilshire Holding Corporation, 9 Cir., 244 F.2d 904, certiorari denied 355 U.S. 815, 78 S.Ct. 16, 2 L.Ed.2d 32. The principal case concerns a fire sprinkler system installed at the taxpayer's plant at Monrovia, California, where Delano T. Starr,[2] now deceased, did business as the Gross Manufacturing Company. The "lessor" was "Automatic" Sprinklers of the Pacific, Inc., a California corporation. The instrument entitled "Lease Form of Contract" (hereafter "contract") is just about perfectly couched in terms of a lease for five years with annual rentals of $1,240. But it is the last paragraph thereof, providing for nominal rental for five years, that has caused the trouble. It reads as follows:

> "28. At the termination of the period of this lease, if Lessee has faithfully performed all of the terms and conditions required of it under this lease, it shall have the privilege of renewing this lease for an additional period of five years at a rental of $32.00 per year. If Lessee does not elect to renew this lease, then the Lessor is hereby granted the period of six months in which to remove the system from the premises of the Lessee."

Obviously, one renewal for a period of five years is provided at $32.00 per year, if Starr so desired. Note, though, that the paragraph is silent as to status of the system beginning with the eleventh year. Likewise the whole contract is similarly silent.

The tax court sustained the commissioner of internal revenue, holding that the five payments of $1,240, or the total of $6,200, were capital expenditures and not pure deductible rental.[3] Depreciation of $269.60 was allowed for each year. Generally, we agree.

Taxpayers took the deduction as a rental expense under trade or business pursuant to Section 23(a) of the Internal Revenue Code, as amended by Section 121(a) of the Revenue Act of 1942.[4]

The law in this field for this circuit is established in Oesterreich v. Commissioner, supra, and Robinson v. Elliot, 9 Cir., 262 F.2d 383. There we held that for tax purposes form can be disregarded for substance and, where the foreordained practical effect of the rent is to produce title eventually, the rental agreement can be treated as a sale.

In this, Starr's case, we do have the troublesome circumstance that the contract does not by its terms ever pass title to the system to the "lessee." Most sprinkler systems have to be tailor-made for a specific piece of property and, if removal is required, the salvageable value is negligible. Also, it stretches credulity to believe that the "lessor" ever intended to or would "come after" the system. And the "lessee" would be an exceedingly

---

1. Thus it shifts rental payments of a business (fully deductible) to a capital purchase for the business. If the nature of the property is wasting, then depreciation may be taken, but usually not all in one year.

2. Presumably the plant and the business were California community property of Starr and his wife, Mary W. Starr. For each of the calendar years 1951 and 1952, they filed joint tax returns.

3. Starr. Estate of, v. Commissioner, 30 T.C. 856.

4. "§ 23 Deductions from gross income
   "In computing net income there shall be allowed as deductions:
   "(a) *Expenses.*—
   "(1) *Trade or business expenses.*
   "(A) *In General.* All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including   *   *   * rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity.   *   *   *"   26 U.S.C.A. § 23.

careless businessman who would enter into such contract with the practical possibility that the "lessor" would reclaim the installation. He could have believed only that he was getting the system for the rental money. And we think the commissioner was entitled to take into consideration the practical effect rather than the legal, especially when there was a record that on other such installations the "lessor", after the term of the lease was over, had not reclaimed from those who had met their agreed payments. It is obvious that the nominal rental payments after five years of $32,00 per year were just a service charge for inspection.[5]

Recently the Court of Appeals for the Eighth Circuit has decided Western Contracting Corporation v. Commissioner, 1959, 271 F.2d 694, reversing the tax court in its determination that the commissioner could convert leases of contractor's equipment into installment purchases of heavy equipment. The taxpayer believes that case strongly supports him here. We think not.[6]

There are a number of facts there which make a difference. For example, in the contracts of Western there is no evidence that the payments on the substituted basis of rent would produce for the "lessor" the equivalent of his normal sales price plus interest. There was no right to acquire for a nominal amount at the end of the term as in Oesterreich and the value to the "lessor" in the personalty had not been exhausted as in Starr's case. And there was no basis for inferring that Western would just keep the equipment for what it had paid. It appears that Western paid substantial amounts to acquire the equipment at the end of the term. There was just one compelling circumstance against Western

in its case: What it had paid as "rent" was apparently always taken into full account in computing the end purchase price. But on the other hand, there was almost a certainty that the "lessor" would come after his property if the purchase was not eventually made for a substantial amount. This was not even much of a possibility in Oesterreich and not a probability in Starr's case.

In Wilshire Holding Corporation v. Commissioner, 9 Cir., 262 F.2d 51, we referred the case back to the tax court to consider interest as a deductible item for the lessee. We think it is clearly called for here. Two yardsticks are present. The first is found in that the normal selling price of the system was $4,960 while the total rental payments for five years were $6,200. The difference could be regarded as interest for the five years on an amortized basis. The second measure is in clause 16 (loss by fire), where the figure of six per cent per annum discount is used. An allowance might be made on either basis, division of the difference (for the five years) between "rental payments" and "normal purchase price" of $1,240, or six per cent per annum on the normal purchase price of $4,960, converting the annual payments into amortization. We do not believe that the "lessee" should suffer the pains of a loss for what really was paid for the use of another's money, even though for tax purposes his lease collapses.

We do not criticize the commissioner. It is his duty to collect the revenue and it is a tough one. If he resolves all questions in favor of the taxpayers, we soon would have little revenue. However, we do suggest that after he has made allowance for depreciation, which he concedes, and an allowance for inter-

---

5. It is true that the normal inspection fee would be $64.00. However, the difference between $32.00 and $64.00 would not seem to ruin the tax court's determination for income tax purposes that there was a sale.

6. It is unnecessary to determine here whether the Ninth Circuit would follow

the decision of the Eighth Circuit or the decision of the tax court. (Western Contracting Corp. v. Commissioner, 17 TCM 371, T.C.Memo. 1958-77, CCH. Dec. 22, 960[M]). It is enough here to say that the Ninth Circuit regards the Eighth Circuit's opinion distinguishable from Starr's case and not inconsistent with the holding herein.

est, the attack on many of the "leases" may not be worth while in terms of revenue.

Decision reversed for proceedings consistent herewith.