LOCKHART LEASING COMPANY,
Appellee,

v.

UNITED STATES of America,
Appellant.

LOCKHART LEASING COMPANY,
Appellee,

v.

COMMISSIONER OF INTERNAL REV-
ENUE, Appellant (two cases).
Nos. 91–70, 289–70 and 290–70.

United States Court of Appeals,
Tenth Circuit.

June 8, 1971.

———◆———

Stephen H. Hutzelman, Atty., Dept. of Justice, Washington, D. C. (Johnnie M. Walters, Asst. Atty. Gen., Lee A. Jackson and Elmer J. Kelsey, Attys., Dept. of Justice, Washington, D. C., and C. Nelson Day, U. S. Atty., with him on the Brief), for appellants.

J. Jay Bullock, Salt Lake City, Utah, for appellee.

Before HILL, SETH, and DOYLE, Circuit Judges.

SETH, Circuit Judge.

These appeals come to this court as two cases from the Tax Court and one case from the United States District Court for the District of Utah. Each case raises the question whether the taxpayer was entitled to the investment credit which was allowable under section 38 of the Internal Revenue Code of 1954. The Tax Court held, 54 T.C. 301, that the taxpayer for its tax years ended in 1962 and 1964 was entitled to the investment credit with certain exceptions, and the Commissioner has taken appeals from those decisions. The Tax Court opinion contains a detailed statement of the facts and detailed statistics. The United States District Court in the refund action brought by the taxpayer also decided the taxpayer was entitled to the investment credit for the fiscal year ended in 1963. The United States has taken an appeal from that decision.

In each of the cases the initial question is whether the taxpayer was engaged in the business of leasing equipment and machinery as it contends, or whether it was instead, as the appellants contend, selling the items and financing the sales or just financing purchases by its customers.

It appears from the record that the taxpayer purchased machine tools, store equipment, business or office equipment, and similar items from a variety of sources as they were requested by its customers. The customer would request a particular machine, taxpayer would purchase it from the maker or a dealer, and it would be placed in the customer's possession and use usually under a form called an Equipment Lease Agreement. Often the customer would first contact the maker or dealer and discuss an item of equipment before negotiating with taxpayer. The agreement provided the term or length of time for the arrangement, the rental, an option to renew if such was negotiated, and occasionally an option to purchase in the customer.

The taxpayer entered into, for its fiscal year ended in 1962, thirty-two such arrangements, for the year 1963 sixty, and for 1964 one hundred eleven, and in all but four of these the same form was used. The terms of this agreement, and the general business conducted by the taxpayer constitute the center of the dispute.

The Equipment Lease Agreement states that the arrangement is a lease and that title does not pass. It also provides that the customer assume all the risks of loss of the property. If the customer does not perform its obligations, it is stated that the equipment may be repossessed. The customer was to pay any taxes on the equipment, to insure it against loss, and pay for repairs and maintenance. The "loss value" was stated in the agreement as was the place where the equipment was to be kept. The taxpayer had no repair or storage facilities. The taxpayer did not transfer or assign its ownership or its position under the agreement to others. The issue relates only to transactions with a term of more than four years.

The trial courts found that in a number of instances the taxpayer was required to retake possession of the equipment as provided in the agreement before the end of the term and to make some disposition of it, and was also required on occasion to dispose of equipment at the end of the term. The record shows that the parties to each agreement negotiated the provisions with a view to the worth of the equipment at the end of the term. The record does not show that the total amount paid by the customer during the term was disproportionate to the value of the equipment for such period. The record shows that where the agreement contained an option to buy in the customer, it was an amount based upon the expected value of the property at the time the option could be exercised. In two out of some two hundred agreements, there was an arbitrary option price of one or ten dollars. When the agreement contained no option to buy

the courts below found that if the customer was to buy a price was then negotiated.

■ The Revenue Act of 1962 added section 38 to provide for a special credit against tax for the investment in certain depreciable property. The provisions were limited to tangible property other than buildings put to qualified uses and limited to property to which depreciation, or amortization in lieu thereof, is allowable, and having a useful life of four years or more. This last limitation relating to depreciation raises the issue here, as the person who has the depreciable interest is the one who can claim the credit. The investment credit provisions were repealed by section 703 of the Tax Reform Act of 1969.

The purpose of the investment credit was to encourage the purchase and use of new productive machinery by giving a limited tax incentive to those who would invest in such new equipment. It is apparent that the incentive was not for the sellers of such equipment nor for those who were merely financing the purchases. The Act did make express reference to leased property in section 48(d) to provide that a lessor of qualified property may under appropriate regulations " * * * elect with respect to any new section 38 property to treat the lessee as having acquired such property." Also in the House Report No. 1447 relating to the 1962 Revenue Act, a statement was made that the bill provided that the lessor of property could treat the investment as made by the lessee rather than himself. It thus appears that the Act contemplated that a taxpayer who leased qualified property to others was entitled to claim the credit. Thus the question on this appeal is whether the taxpayer had a depreciable interest in the property which was the subject of its agreements with its customers.

We must agree with the analysis of the transactions as made by the Tax Court, considering also as it did, the nature of taxpayer's business as a whole. It cannot be said that any one element present in the agreements is conclusive on the depreciation question, including an option to purchase; nor can it be said that all provisions considered together place the burdens of ownership on the customer to the extent that the agreement transferred from the taxpayer a depreciable interest in the equipment. The Tax Court found that the rental payments and the option provisions or negotiated options all had a reasonable relationship to the value of the property during the term of the agreement or at the option date. The court also found that in only one instance did the taxpayer make an arrangement with the supplier to it of the equipment to assist taxpayer in the event the agreement with a customer was breached. This is a factor relating to the bona fide nature of the purchases by the taxpayer. The Tax Court also found that the taxpayer was not here engaged in financing the purchases and this is also supported by the facts. Taxpayer's record-keeping was in a form ordinarily used by those engaged in financing, but the Tax Court found there was a reasonable explanation for this method, and the method as such was not a determinative fact.

The United States District Court found that the length of the agreement was negotiated on the basis of the type of the equipment and its expected use by the customer. It also found that the rentals were based on the cost of the equipment, how long it was to be used, and what the value was expected to be at the end of the agreement. The court also found that when an option price was stated it was based on the fair market value of the equipment at the end of the lease. The trial court thus concluded that the property subject to the agreements was a qualified investment under section 38(a) of the 1954 Code to allow taxpayer the investment credit.

■ The burden was on the taxpayer before the Tax Court and the District Court to establish that it was entitled to the credit. Wallis v. Com'r of Internal Revenue, 357 F.2d 313 (10th Cir.); Anson v. Com'r of Internal Revenue, 328

F.2d 703 (10th Cir.). This standard was applied by both courts. The appellants urge that the cases of Mt. Mansfield Television, Inc. v. United States, 342 F.2d 994 (2d Cir.); Starr's Estate v. Com'r of Internal Revenue, 274 F.2d 294 (9th Cir.), and Oesterreich v. Com'r of Internal Revenue, 226 F.2d 798 (9th Cir.), should control this determination. In Oesterreich however the lease period was for sixty-eight years and gave the lessee the option to purchase for ten dollars at the end of the lease, having paid some $679,000.00 in rentals. This type of option is not comparable to the ones before us. The cited case did, however, consider the effect of the obligation of the lessee under the agreement to make repairs and assume the risks of loss or damage. As indicated, the options were with only one or two exceptions not for an arbitrary amount. The Tax Court and the District Court found in the instances where an option price was stated, as it was in about one-third of the agreements, that it related realistically to the actual market values. Further, the presence of an option price was not itself a determinative factor. See Kitchin v. Com'r of Internal Revenue, 353 F.2d 13 (4th Cir.). Further as indicated above, the record demonstrates that the rentals were related to standard rates and did not represent a recovery of the purchase price plus interest. Thus the unusual factual situation represented in Starr's Estate v. Com'r of Internal Revenue, 274 F.2d 294 (9th Cir.), prevents its application here. There the lease of a sprinkling system installed in the building for the indefinite term at a nominal rate, and with the repossession problem, presents quite a different problem. In Mt. Mansfield Television, Inc. v. United States, 342 F.2d 994 (2d Cir.), the agreement covered a transmission system designed for the taxpayer, the agreement provided for interest on the balances, and was sold by the lessor to a bank. This again is not comparable here under the findings of the courts below. We do not consider Revenue Ruling 55–540 to be applicable here because it considered the position of a lessor not in the business of leasing property.

There has been much litigation under a variety of circumstances as to what constitutes a lease generally and for tax purposes. See Breece Veneer & Panel Co. v. Com'r of Internal Revenue, 232 F.2d 319 (7th Cir.). As indicated above no one factor is controlling and, of course, substance must prevail over form. The general business of taxpayer and the manner in which it is conducted must be examined. When this is done with the record before us we must hold that the Tax Court and the United States District Court were correct in their conclusions. The evidence that the agreements were leases in substance as well as in form is clear, and we find the taxpayer carried its burden in the several proceedings. The bits and pieces of evidence which the appellants here urge are not convincing and in any event the findings of the trial courts are supported by the evidence. The application of the law to the taxpayer's business must come from a variety of sources and this also was properly applied by the trial courts. Accordingly each of the three cases is hereby

Affirmed.